UNITED STATES DISTRICT COURT **FILED**
DISTRICT OF CONNECTICUT

2004 MAR 31  P 1:57

U.S. DISTRICT COURT
HARTFORD, CT.

NORMA WATTS, Administratrix of  :
the Estate of Aquan Salmon,     :
                                :
    Plaintiff,                  :
                                :
V.                              :   CASE NO. 3:00CV0681 (RNC)
                                :
CITY OF HARTFORD, POLICE        :
DEPARTMENT OF THE CITY OF       :
HARTFORD, JOSEPH F. CROUGHWELL, :
Individually and in his Official:
Capacity as Chief of Police of  :
the City of Hartford, and       :
OFFICER ROBERT C. ALLAN,        :
Individually and in his Official:
Capacity as a Hartford Police   :
Officer,                        :
                                :
    Defendants.                 :

### RULING AND ORDER

Norma Watts, Administratix of the Estate of Aquan Salmon, brings this action pursuant to 42 U.S.C. § 1983 against the City of Hartford, its former police chief Joseph F. Croughwell, and Robert C. Allan, a Hartford police officer. Her third amended complaint claims that Allan used excessive force in violation of the Fourth Amendment when he fatally shot Salmon, her grandson, and that the City and Croughwell should also be held responsible for the shooting. State law claims are also asserted against Allan for intentional infliction of emotional distress, negligent infliction of emotional distress, and wrongful death, and against both Allan and the City for negligence.

Pending for decision are two motions filed by defendants: (1) a motion for summary judgment on (a) the state law claims

1

against Allan (except the wrongful death claim) and (b) all the claims against the City and Croughwell [Doc.# 98]; and (2) a motion to strike certain exhibits submitted by plaintiff in her opposition to the motion for summary judgment [Doc.# 105]. For reasons set forth below, the motion for summary judgment as to the claims against Allan is denied, the motion for summary judgment as to the claims against the other defendants is granted, and the motion to strike is denied as moot.

BACKGROUND

In the early morning hours of April 13, 1999, the Hartford Police Department received complaints that three or four young black males had committed assaults with guns. The suspects were said to be driving a white Cadillac, bearing registration number 397-KRZ. Allan, who was on patrol in his cruiser in the City's North End, saw the Cadillac and reported its location. After a brief chase, the driver got out and attempted to climb over a chain link fence, refusing to comply with Allan's orders to stop. Salmon, one of the car's passengers, also got out, approached the same fence, and was shot once in the left side of his back. Allen claims that he fired at Salmon in self-defense because he feared Salmon was about to shoot him.

To put the present motions in proper context, it is necessary to briefly describe the somewhat unusual procedural history of this case. Defendants sought summary judgment once before when the case was assigned to Judge Squatrito. While their motion was pending, plaintiff withdrew her claims against

the City and Croughwell, leaving only her Fourth Amendment and state law claims against Allan. The motion for summary judgment was then denied. After further discovery, plaintiff obtained Judge Squatrito's permission to file a third amended complaint, the operative complaint here, reasserting the previously withdrawn claims against the City and Croughwell. Defendants then received permission to file another motion for summary judgment, which is the one now pending for decision.

DISCUSSION

Summary judgment may be granted only when the court is satisfied "that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must review the record as a whole, credit all evidence favoring the nonmovant, give the nonmovant the benefit of all reasonable inferences, and disregard all evidence favorable to the movant, except evidence that comes from third parties and is uncontradicted and unimpeached. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000).

A motion to strike may be used to challenge the admissibility of evidentiary materials submitted in connection with a motion for summary judgment. However, a court may choose to deny a motion to strike and give the challenged materials whatever consideration may be appropriate in analyzing the motion for summary judgment.

State Law Claims Against Allan

Defendants' motion for summary judgment on the state law

3

claims against Allan (other than the wrongful death claim) is denied for procedural reasons. Defendants appear to be reasserting arguments that were advanced in support of their earlier motion for summary judgment on the same claims. Judge Squatrito's denial of the previous motion (in accordance with the recommendation of Magistrate Judge Smith) implicitly determined that these state law claims present triable issues of fact. Moreover, little would be gained by entertaining another motion for summary judgment on these claims, rather than a motion for judgment as a matter of law at the close of plaintiff's case in chief, because all the claims appear to involve substantially the same evidence. Accordingly, the legal sufficiency of the state law claims against Allan will not be reconsidered at this time.

Section 1983 Claims Against the City and Croughwell

A municipality and its supervisory officials may not be held liable under § 1983 for unconstitutional acts of lower level employees solely on the basis of the employment relationship. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Hayut v. State Univ. of New York, 352 F.3d 733, 753 (2d Cir. 2003). In order to establish liability, plaintiff must establish that the constitutional violation resulted from a municipal custom, policy or practice. Monell, 436 U.S. at 690-91; Jeffes v. Barnes, 208 F.3d 49, 56-57 (2d Cir.), cert. denied sub nom. County of Schenectady v. Jeffes, 531 U.S. 813 (2000). In the absence of direct evidence of an unconstitutional policy, plaintiff may prevail with circumstantial evidence that the violation was "so

4

likely" to occur that defendants could "reasonably be said to have been deliberately indifferent" with respect to it. Canton v. Harris, 489 U.S. 378, 390 (1989); see Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991).

Plaintiff claims that the City and Croughwell may be held liable under § 1983 on two different theories. She alleges that Officer Allan was hired without adequate screening to determine whether he had a propensity for violence. In addition, she alleges that there was a pattern and practice of failing to properly supervise officers accused of misconduct, including Allan.[1]

The City and Croughwell contend that they are entitled to summary judgment on these claims because, by the time the claims reappeared in the present, third amended complaint, the applicable three-year statute of limitations had expired. Plaintiff responds that under Rule 15(c) of the Federal Rules of Civil Procedure, the claims should be deemed to relate back to the date of the filing of the original complaint. I agree with plaintiff. The present claims arise out of the same general conduct attempted to be set forth in the original pleading, and fair notice of the claims was provided by virtue of the allegations in the original complaint.

Defendants further contend that summary judgment is

---

[1] Plaintiff concedes that Allan's training was adequate. (Pl.'s Opp. p. 17 n.1.) She also asserts a failure-to-discipline claim but it appears to be the same as her failure-to-supervise claim and therefore will not be analyzed separately.

appropriate as to these claims because plaintiff -- who would bear the burden of persuasion at trial -- cannot prove that a municipal or supervisory failure was a moving force in the fatal shooting of her decedent, as she must in order to recover against them. See Bd. of County Comm'rs of Bryan County, Okla., 520 U.S. 97, 404 (1997); Thomas v. Roach, 165 F.3d 137, 145-46 (2d Cir. 1999).

Plaintiff's failure-to-screen claim does not present a triable issue of fact. To prevail on this claim, plaintiff must be able to prove that "adequate scrutiny of [Allan's] background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire [him] would be the deprivation of a third party's federally protected right . . . ." Bd. of Comm'rs of Bryan County, 520 U.S. at 411. Plaintiff offers no evidence of defendants' actual hiring practices, defects in those practices, or conduct in Allan's background that would have made his unsuitability for police work patently obvious. As far as the record shows, the failure-to-screen claim is based solely on a statement attributed to an anonymous police department employee, who allegedly said, "Our hiring practices here are terrible." (Pl.'s Ex. J, p. ii.) Defendants contend that the quoted statement constitutes inadmissible hearsay and is of no probative value in any event due to its highly ambiguous nature. I agree. Summary judgment on this claim is therefore granted.

Plaintiff's failure-to-supervise claim presents a closer

question. The claim is based on the following evidentiary materials:

- The 1994 Annual Report of Hartford's Civilian Police Review Board.[2] (Pl.s Ex. H.) The Report states that during 1993-94, then-Chief Croughwell frequently rejected complaints against officers that the Board thought should be sustained,[3] and undermined the effectiveness of the Board in a number of other ways.[4] The Report identified systemic problems that tended to make it difficult to resolve complaints appropriately and offered specific recommendations for improving the process.[5] (Id.)

- A Comprehensive Management Study of the Hartford Police

---

[2] The Board was established by ordinance in 1992 with a mandate "to review citizen complaints against police conduct and to make recommendations to the chief of police in connection therewith." Hartford Municipal Code § 2-196(a) (1992). The ordinance requires the Board to submit an annual report to the City's Human Relations Commission indicating, among other things, the disposition of complaints. Id. at § 2-196(m).

[3] The Board voted to sustain fourteen of twenty-four complaints alleging excessive force, but Croughwell subsequently sustained only two.

[4] The Report discusses problems the Board encountered in the first eighteen months of its operation (from April 1993 through October 1994), including poor treatment of complainants by Internal Affairs investigators during interviews; a lack of cooperation by charged officers; and Croughwell's failure to provide information to the Board, either on a timely basis or at all, regarding complaint dispositions and disciplinary actions.

[5] The Report expresses concerns about long delays in dealing with complaints, permitting investigators in the Internal Affairs Division to classify complaints in a manner that understated their seriousness, and allowing officers to read complainants' version of events before asking them for their versions (thus affording them an opportunity to tailor their responses).

7

Department published by Carroll Buracker & Associates, Inc., a private consulting firm, in October 1999, approximately six months after the shooting at issue here. (Pl.'s Ex. J.) This Study sets forth "representative" comments by police department personnel regarding conditions or practices needing attention, including: "I have tried to discipline officers for conduct, but it's overturned"; and "Discipline is virtually non-existent in this Department." (Id., p. iii.) The Study also sets forth recommendations regarding human resources management, including: "Increasing the objectivity with which citizen and internal complaints are investigated, and with which discipline is administered."[6]  (Id., p. xx.)

- A statement by civilian members of the City's Firearm Discharge Review Board concerning the shooting of plaintiff's decedent; and,

- Police department records relating to prior complaints against Allan. Three citizen complaints were filed against Allan between February 1997 and July 1998. One of them, complaint 97-46, alleges that in the course of a traffic stop in September 1997, Allan pointed his gun at the complainant for no reason, and held it against his head while demanding to see his license. (Pl.'s Ex. A; Defs.' Reply Ex. I.) Though the complaint's

---

[6] Other recommendations include: "Initiating procedural changes to reduce the complaint case backlog"; "Consolidating all Orders pertaining to citizen and internal complaint function"; and "Develop an 'Early Warning System' to identify officers with multiple complaints . . . ." (Pl.'s Ex. J, p. xx.)

emphasis is on Allan's alleged misuse of his gun, it was classified by Internal Affairs as alleging "bad judgment."[7]

The City and Croughwell contend that the 1994 Board Report, the Buracker study and the Statement Of The Civilian Members of the Firearm Discharge Review Board should not be considered because they are replete with inadmissible hearsay and have little or no probative value.  Plaintiff offers no argument to overcome these objections with regard to the Civilians' Statement.  However, she correctly argues that the 1994 Board Report is admissible, in substantial part at least, under the public records exception to the hearsay rule.[8]  As for the Buracker study, I agree that its admissibility is doubtful.[9]  But

---

[7] Defendants offer evidence that in two of the three cases, including the one just described, the complainant signed a written request to withdraw the complaint, (Pl.'s Ex. A; Defs.' Reply Exs. I, K), and that in the third case, an Internal Affairs investigator exonerated Allan after repeated attempts to interview the complainant yielded no response.  (Dryfe Aff., Defs.' Reply Ex. I.)

[8] A non-governmental entity may be deemed a public agency for purposes of this exception when it has an ongoing legal duty to provide the government with information or when it is a quasi-public entity created by the government to serve its needs.  See, e.g., Gilbrook v. City of Westminster, 177 F.3d 839, 848, 858 (9th Cir. 1999) (treating citizens' committee appointed by city council as public agency); Erickson v. Baxter Healthcare, Inc., 151 F. Supp. 2d 952, 966-67 (N.D. Ill. 2001) (treating National Academy of Sciences as quasi-public entity because it was created by an Act of Congress specifically to conduct investigations for, and report to, Congress).  Here, the Board's mandated duty to report on complaint dispositions is broad enough to encompass its factual findings.

[9] Plaintiff contends that the study satisfies the public records exception under Rule 803(8), but the fact that the City commissioned Buracker, pursuant to a municipal ordinance, to perform the study does not render the consulting group a "public

9

the contents of the study may nevertheless be consulted to determine whether there are facts plaintiff could prove through competent evidence to support a verdict in her favor. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (denial of summary judgment must be based on facts that would be admissible in evidence, but plaintiff need not produce evidence of such facts in a form that would be admissible at trial in order to avoid summary judgment).[10]

Plaintiff's submissions, viewed most favorably to her, give credence to her allegation that the City and Croughwell failed to implement and maintain an adequate system for addressing citizen complaints against the City's police officers. The Board Report would permit a jury to find that Croughwell's handling of citizen complaints was inadequate, at least as of the time the Report

---

agency." See United States v. Blackburn, 992 F.2d 666, 672 (7th Cir.), cert. denied, 510 U.S. 949 (1993) (private eyeglass manufacturer generating report at the direction of an FBI agent was not a public entity); Ricciuti v. N.Y.C. Transit Auth., 754 F. Supp. 980, 985 (S.D.N.Y. 1990), remanded on other grounds, 941 F.2d 119 (2d Cir. 1991) (private consulting firm requested by public agency to conduct study was not public agency). Neither does Buracker fall within the limited scope of private entities that have been treated as public agencies under Rule 803(8), such as where the entity is under the close direction and control of the government or is a "quasi-public entity" with a continuing legal mandate to produce reports at the behest of the government. See, e.g., Erickson, 151 F. Supp. 2d at 966-67 (National Academy of Sciences is quasi-public entity because it was created by an Act of Congress specifically to conduct investigations for, and report to, Congress); United States v. Davis, 826 F. Supp. 617, 621-22 (D. R.I. 1993) (private entity under direction and control of Environmental Protection Agency).

[10] Plaintiff presumably could identify and subpoena police department personnel with personal knowledge of the matters discussed in the Buracker study.

was published. The comments of police department personnel quoted in the Buracker study suggest that systemic problems described in the Report persisted, perhaps because the Report's recommendations for improving the system were not implemented. In addition, the failure to accurately classify the citizen complaint against Allan for improper use of his gun could be viewed by a reasonable juror as evidence of a deliberate failure to deal with the complaint in an appropriate manner.

Taking all this into account, I conclude that summary judgment must nonetheless be granted on the failure-to-supervise claim. Plaintiff must provide evidence from which a reasonable juror could conclude that, before the shooting at issue here, the City's response to citizen complaints of police brutality demonstrated a policy of negligent supervision that rose to the level of deliberate indifference to officers' use of deadly force in violation of constitutional rights. See Berry v. City of Detroit, 25 F.3d 1342, 1346 (6th Cir. 1994), cert. denied, 513 U.S. 1111 (1995) (overturning jury verdict against City in § 1983 case arising from fatal shooting and directing entry of judgment in favor of City); see also Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983) ("municipal inaction such as the persistent failure to discipline subordinates who violated civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of Monell"); Fiacco. v. City of Rensselaer, 783 F.2d 319, 331 (2d Cir. 1986), cert. denied, 480 U.S. 922 (1987) (in excessive force

11

case, evidence permitted jury to conclude that during two years before plaintiff's arrest, City's response to five complaints of excessive force was uninterested and superficial in that no formal statement was taken from the complainant, no file was created, no investigation was done, and chief merely spoke with accused officer without putting notation in officer's file). Further, plaintiff must provide evidence that this repeated failure to discipline other officers was closely related to and actually caused Allan's shooting of plaintiff's decedent. See Berry, 25 F.3d at 1346; see also Canton, 489 U.S. at 391. Plaintiff offers no such allegations or evidence.

Instead, plaintiff relies on an alleged pattern and practice of failing to discipline officers in general.[11] The 1994 Board Report provides evidence of the City's failure to discipline officers for excessive force and other civil rights violations, but those incidents predate the incident at issue here by four to five years. The Buracker Study, which addresses the period relevant to Allan's conduct, makes no reference to complaints of

---

[11] Plaintiff's experienced counsel withdrew the claims against the City and Croughwell and later reasserted them after engaging in further discovery. Thus, this is not a situation in which summary judgment might be deemed premature because counsel had not yet been given the opportunity to complete relevant discovery. See Signorile v. City of New York, 887 F.Supp. 403, 424 (E.D.N.Y. 1995) (finding insufficient general allegation in excessive force claim that the city failed to discipline its officers in "other similar police operations" absent evidence of specific examples, but concluding that summary judgment was premature because discovery had been stayed pending decision on that motion).

unconstitutional conduct or the department's handling of such complaints. Construed most favorably to plaintiff, the Study suggests that there were deficiencies in the citizen complaint process and a perceived lack of discipline. A general policy of lax discipline, assuming it could be proven, does not demonstrate deliberate indifference to serious misconduct rising to the level of unconstitutional acts. See Davis v. Lynbrook Police Dept., 224 F. Supp. 2d 463, 478-79 (E.D.N.Y. 2002) (distinguishing between irrelevant evidence of complaints of general misconduct and relevant evidence of complaints of unconstitutional conduct); Harris v. City of Kansas City, Kan., 703 F. Supp. 1455, 1459 (D. Kan. 1988) (finding incompetent evidence of prior complaints that do not rise to level of excessive force to counter summary judgment); see also Poulsen v. City of North Tonawanda, N.Y. 811 F. Supp. 884, 896 (W.D.N.Y. 1993) ("A mere lack of responsiveness, failure to supervise employees, or nonfeasance has been held insufficient to establish a causal link between a municipal custom or practice and a constitutional violation."). To the extent that one complaint lodged and subsequently withdrawn against Allan was improperly classified as "bad judgment," rather than excessive force, a single incident is insufficient to establish a policy of inadequate discipline. See Turpin v. Mailet, 619 F.2d 196, 202 (2d Cir.), cert. denied, 449 U.S. 1016 (1980). Plaintiff's failure-to-supervise claim against

the City must therefore be dismissed.[12]

In the absence of municipal liability, Croughwell cannot be held liable in his official capacity. See Curley v. Village of Suffern, 268 F.3d 65, 72 (2d Cir. 2001). In order to hold Croughwell liable in his individual capacity, plaintiff must offer proof from which a jury reasonably could find a causal connection between some action or inaction on his part and Allan's shooting of her decedent. See Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002). There is no such evidence. Even assuming Croughwell knew that Allan was reported to have misused his gun in the course of a traffic stop in 1997 and acquiesced in the improper classification of that incident as "bad judgment," a reasonable juror could not find that Croughwell should have concluded that Allan had a propensity for violence and was likely to use deadly force improperly.

Accordingly, summary judgment is granted on the § 1983 claims against the City and Croughwell.

Negligence Claim Against the City

Plaintiff alleges that the City breached duties mandated

---

[12] The reported cases sustaining a failure-to-supervise or failure-to-discipline claim in the context of improper use of deadly force are clearly distinguishable. See Zuchel v. City and County of Denver, Colo., 997 F.2d 730, 740 (10th Cir. 1993) (evidence of recurring incidents of use of deadly force, including five incidents in six week period where citizens were injured or killed); Spell v. McDaniel, 824 F.2d 1380, 1392-95 (4th Cir. 1987), cert. denied sub nom. City of Fayetteville, N.C. v. Spell, 484 U.S. 1027 (evidence included seven citizens testifying about brutality complaints they filed that resulted in no corrective action).

14

under the <u>Cintron</u> consent decree. See <u>Cintron v. Vaughn</u>, 3:69-CV-13578 (D. Conn. July 21, 1973). Under the consent decree, the City agreed to institute certain procedures relating to the use of deadly force, including the establishment of a Firearms Discharge Review Board and a higher standard for the use of deadly force. Plaintiff's evidence demonstrates that the City complied with both obligations. See Pl.'s Ex. F (Policy and Procedure - Firearms Discharge Board), Ex. G (Policy and Procedure - Firearms Guidelines).[13]

CONCLUSION

Accordingly, the motion for summary judgment is hereby granted as to the claims against the City and Croughwell, and denied as to the claims against Allan, and defendants' motion to strike is denied as moot.

So Ordered.

Dated at Hartford, Connecticut this 31st day of March 2004.

                                       Robert N. Chatigny
                              United States District Judge

---

[13] Defendants correctly argue that to the extent the negligence claim is based on a failure to implement and maintain an adequate system for handling citizen complaints and disciplining officers, it is not actionable because those activities require the exercise of discretion. See <u>Gordon v. Brideport Housing Auth.</u>, 208 Conn. 161, 180-81 (1988); <u>Feliciano v. City of Hartford</u>, 2003 WL 1090275, *3 (Conn. Super. Ct. Feb. 21, 2003).