00CV681

Exhibit

A

# HARTFORD POLICE DEPARTMENT
## GENERAL ORDER
# POLICY AND PROCEDURE
### (CONTINUATION)

| | EFFECTIVE DATE | NUMBER |
|---|---|---|
| | 11/20/88 | 1-20 |

| SUBJECT | | |
|---|---|---|
| FIREARMS GUIDELINES | | PAGE 2 OF 2 PAG |

## III.  PROCEDURES:

A.  The use of firearms by sworn personnel is permitted only in those cases where all other means of controlling the situation or apprehending a dangerous person are insufficient and:

1.  The officer reasonably believes such use of firearms is necessary to defend the officer or another person, from the use or imminent use of such force as can be reasonably expected to cause death or serious physical injury, or

2.  To effect the arrest or prevent the escape from custody of a person the officer reasonably believes has committed or attempted to commit a felony which involved the infliction of serious physical injury or death, provided the officer has identified him/herself by voice and has given warning to the fleeing suspect of ~~his/her~~ intent to use deadly physical force, or

3.  To put to death an animal which presents an immediate serious physical threat to the officer or a third party, or one that is so badly injured that humaneness demands its immediate removal from further suffering.

   a)  Every effort should be made to obtain assistance from the Dog Warden or Connecticut Humane Society to remove an animal that is badly injured and only when such assistance is not available should firearms be used to remove it from further suffering.

B.  The use of firearms is prohibited:

1.  Under circumstances where the lives of innocent persons could be endangered by such use of a firearm.

2.  Against any individual the officer knows or reasonably believes to be under 16 years of age except to defend the officer or a third person from the use or imminent use of deadly physical force.

3.  To fire from or at a moving vehicle unless the occupants of the other vehicle are using deadly physical force against the officer or another person.

4.  To fire warning shots or sound a call for assistance.

HPD FORM 34 (REV. 9/88)



| HARTFORD POLICE DEPARTMENT **POLICY AND PROCEDURE** | EFFECTIVE DATE 6/29/86 | NUMBER 1-21 |
| --- | --- | --- |
| ...rd R. Sullivan ..ef of Police | DATE OF ISSUE 6/27/86 | DISTRIBUTION ALL SWORN PERSONNEL |

| SUBJECT | REFERENCE |
| --- | --- |
| FIREARMS DISCHARGE BY OR UPON SWORN PERSONNEL – INVESTIGATIONS | SEE BELOW |
| | RESCINDS Order 1-21 of (10/4/81)    PAGE 1 OF 7 P |

Reference:  Order 3-1 (3/29/81), Order 5-8 (3/25/84),
    Order 8-18 (4/4/85), Order 8-19 (10/17/85), Order 2-10 (10/4/81)

I.  PURPOSE:

To establish policy and procedures for the investigation of incidents whereby sworn members of this department discharge a firearm, on or off-duty, or are the victims of firearms assaults while in the lawful performance of their duties, and when members of other law enforcement agencies discharge a firearm within the limits of the City of Hartford.

II.  POLICY:

A. All firearm discharges by sworn members where no personal injury or death occurs and all incidents involving officers who are fired at but not struck by gunfire, shall be investigated by the affected officer's commander and by the commanders of any other affected divisions.

1. Incidents which involve the discharge of firearms by members of other law enforcement agencies which do not result in personal injury or death will be handled according to standard procedures.

B. For all firearms discharge incidents in which a sworn member is struck by gunfire and all incidents wherein a police officer injures or fatally strikes another person, the Commander, Crimes Against Persons Division shall assure sole responsibility for the investigation.

1. Any officer who discharges a firearm, on or off-duty, causing physical injury or death to another person shall be placed in an in-house assignment pending review of the incident by the Firearms Discharge Review Board.

a. Officers involved in incidents as described above may be allowed a leave of absence from the job immediately following the incident. The type of leave and duration shall be at the discretion of the Chief of Police.

AUTHORITY OF:

BERNARD R. SULLIVAN, CHIEF OF POLICE

HPD FORM 32 REV. 10/82



### HARTFORD POLICE DEPARTMENT
# POLICY AND PROCEDURE
#### (continuation)



| NUMBER |
|---|
| 1-21 |

**SUBJECT**

FIREARMS DISCHARGE BY OR UPON SWORN PERSONNEL – INVESTIGATIONS

| EFFECTIVE DATE |
|---|
| 6/29/86 |

II.   <u>POLICY</u>:  (con't)

G. The commander responsible for the investigation of incidents under this order will be responsible for the completion of the Special Investigative Report.

III.  <u>PROCEDURES</u>:

A. Police officers involved in a firearms discharge incident as articulated above shall;

   1. As soon as possible, notify or cause the notification of a supervisor.

   2. Complete H.P.D. Form #9, Firearms Discharge/Assault Report in quadruplicate.

      a. Retain one copy and forward remainder to Supervisor.

   3. Complete a Case Incident Report pursuant to H.P.D. Order 1-16.

      a. C.I.R. must be submitted within such time limits as established by the Commander conducting the investigation after the officer is granted a reasonable time to compose himself away from the scene.

   4. If requested, be allowed to have union representation present at all interviews.

B. Supervisors who are notified or become aware of a shooting incident as defined in this order shall:

   1. Retrieve any firearm used in the incident and forward same to Evidentiary Services personnel for evidence processing and examination.

   2. Immediately notify the Patrol Commander.

   3. Assure that when a department member is involved, H.P.D. Form #9, is completed in quadruplicate and submitted to the affected Patrol Commander. When necessary, assist affected subordinate personnel with its completion.



HARTFORD POLICE DEPARTMENT

# POLICY AND PROCEDURE

(continuation)



**NUMBER**

1-21

ard R. Sullivan
nief of Police

**SUBJECT**

FIREARMS DISCHARGE BY OR UPON SWORN PERSONNEL — INVESTIGATIONS

**EFFECTIVE DATE**

6/29/86

---

III.  **PROCEDURES:**  (con't)

  8. Forward a copy of the investigative file to the State's At-
     torney's Office for review.

  9. Forward a copy of the investigative file to the Commander,
     Inspections Division for review.

 10. Forward copy of HPD Form #9a and #9b to Commander, Career
     Development.

D. The Patrol Commander shall:

  1. When advised of incidents outlined in II-A. of this order,
     notify the affected officer's commander to assume
     responsibility for the investigation.

  2. When advised of incidents outlined in II-B of this order
     notify the Commander of CAPERS to assume responsibility
     for the investigation.

  3. In all cases, make appropriate notifications as outlined in
     H.P.D. Order 5-8 "Unusual Occurrence and Special Investiga-
     tive Reports."

  4. Forward the original of HPD Form #9 to the Commander,
     Records Division, a copy to the commander responsible for
     the investigation and to the Commander, Career Development
     Division.

E. Affected Division Commanders shall:

  1. Assume direct responsibility for investigation of incidents
     under Sec. II-A of this order.

  2. Assign responsibility for investigation to a supervisor
     and monitor the investigation to its completion.

  3. Complete a Special Investigative Report in accordance with
     H.P.D. Order 5-8.

  4. Forward a copy of the investigative file to the Commander,
     Inspections Division for review.

  5. Forward copy of H.P.D. Form #9a and #9b to the Commander,
     Career Development.



**HARTFORD POLICE DEPARTMENT**

# POLICY AND PROCEDURE



| | NUMBER |
|---|---|
| | 1-21 |

ard R. Sullivan
Chief of Police

(continuation)

| SUBJECT | EFFECTIVE DATE |
|---|---|
| FIREARMS DISCHARGE BY OR UPON SWORN PERSONNEL – INVESTIGATIONS | 6/29/86 |

III.   PROCEDURES:   (con't)

    J. All copies of firearms discharge incidents are to be designat-
ed "CONFIDENTIAL" and must be kept in secure environments.
Contents may not be discussed except as authorized by the de-
signated Division Commanders and only in conjunction with the
investigation.  Copies shall not be reproduced for any indi-
vidual including the officer(s) involved, attorney, union,
etc. without the authorization of the Chief of Police.



**HARTFORD POLICE DEPARTMENT**
**POLICY AND PROCEDURE**

**GENERAL ORDER**

| EFFECTIVE DATE: | NUMBER: |
|---|---|
| **3/21/96** | **1--21a** |
| ISSUANCE DATE: | |
| **3/22/96** | PAGE 1 OF 1 PAGES |

DISTRIBUTION:
**ALL SWORN PERSONNEL**

| SUBJECT: | REFERENCE: | RESCINDS: |
|---|---|---|
| Amendment to: Firearms Discharge By Or Upon Sworn Personnel - Investigations | **SEE BELOW** | |

Reference:  Order 3-1 (3/29/81), Order 5-8 (3/25/84), Order 8-18 (4/4/85), Order 8-19 (10/17/85), Order 2-10 (10/4/81)

## I.  PURPOSE:

To amend Policy and Procedure number 1-21 by rescinding Section II. B.1. and substituting  new language; and by adding new Section III. C. 2. A., as follows:

## II. B. 1.

Any officer who discharges a firearm, on or off-duty, causing physical injury or death to another person shall be placed in an in-house assignment pending review of the incident by the Crimes Against Persons Division and Investigators from the office of the State's Attorney.  Once a review for potential criminal exposure is completed by the State's Attorney's office and no liability is found, the Chief may, at his/her discretion, place the effected officer(s) back on full duty assignment.

## III. C. 2. a.:

Assume the responsibility for notifying the on-duty Investigator from the State's Attorney's Office.  This Investigator will have full access to all reports, statements and evidence that relates to the incident.

BY AUTHORITY OF:

JOSEPH F. CROUGHWELL, CHIEF OF POLICE

HPD FORM 32 (REV. 6/95)

UNTIED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

Mar 15  11 27 AM '00

U.S. DISTRICT COURT
NEW HAVEN, CONN.

MARIA CINTRON, et al.,
          Plaintiffs,    :

v.        :    No. 3:69-cv-13578(EBB)

THOMAS VAUGHN, et al.,
          Defendants.    :

## Ruling on Application to Intervene

Proposed intervenors the Hartford Police Union and Officer Robert C. Allan (the "Intervenors") move pursuant to Fed. R. Civ. P. 24(a)(2) to intervene as of right in the above-captioned case, which was resolved by a consent decree in 1973. The Intervenors claim an interest in the terms of that consent decree, and subsequent amendments thereto, that arises by virtue of their collective bargaining agreement with the defendant in this action. Both parties to this action resist the motion. Because the Intervenors have not shown a significant interest not adequately protected by the current parties that would be impaired by the disposition of this case, the motion is DENIED.

## I.   Background

The original Cintron plaintiffs ("Original" or "Cintron" Plaintiffs) brought this class action in 1969 on behalf of minority residents of Hartford against several city officials, including the chief of police and city manager, alleging constitutional improprieties in the operation of the Hartford

AO 72A
(Rev.8/82)

Police Department.[1]  The case was resolved by a consent decree approved by this court in 1973.  See Settlement Stipulation dated June 21, 1973 (Blumenfeld, J.).  Two subsequent changes purporting to modify the consent decree are germane to the resolution of this motion.

A.  Deferral of Board's Investigation

Among the stipulations contained in the consent decree, one incorporated by reference General Order 70-19, entitled "Establishment of Use of Firearms Board of Inquiry" (the "Board"), which had been issued by then-Chief-of-Police Thomas Vaughn on Sept. 25, 1970.  Id. at ¶ II.4.e.  General Order 70-19 (the "1970 Order") provided for the Board's review to commence within five days of a discharge incident: "The Board of Inquiry shall be convened as soon as possible after the date of discharge of weapons by members of this department, but not later than five days, circumstances permitting."  Order 70-19 at ¶ 2 (Sept. 25, 1970) (emphasis added).

A subsequent written directive issued by Chief Bernard Sullivan in June 1986 (the "1986 Order") materially changed the time during which the Board was to conduct its review.  Under the new policy, the Board could begin its inquiry "only after a return is received from the State's Attorney for those [firearms

---

[1]  Although only particular city officials were named as defendants, the city of Hartford and its corporation counsel have defended this action on their behalf since its inception.

2

discharge] incidents requiring a review [pursuant to Conn. Gen. Stat. § 51-277a of an officer's potential criminal liability]." Hartford Police Department Policy and Procedure No. 1-21 at ¶ III.H (June 29, 1986).

Under the old 1970 Order, the Board had been empowered to commence its review within five days after the incident, and to proceed contemporaneously with any investigation conducted by the state's attorney into whether an officer's use of deadly force was justified. See Conn. Gen. Stat. § 53a-22 (outlining circumstances in which the use of deadly force is justified). The 1986 Order purported to forestall any Board review of fatal shootings by officers until after the state's attorney completed his investigation and issued a report pursuant to Conn. Gen. Stat. § 51-277a.

B.    Unilateral Reinstatement of Officer

The 1986 Order also provided that "Any officer who discharges a firearm, on or off-duty, causing physical injury or death to another person shall be placed in an in-house assignment pending review of the incident by the Firearms Discharge Review Board." 1986 Order at ¶ II.B.1. Ten years later, this provision was amended by Chief Joseph Croughwell to permit an officer's return to full duty at the Chief's discretion "[o]nce a review for potential criminal exposure is completed by the State's Attorney's office and no liability is found." Hartford Police Department Policy and Procedure No. 1-21a amending No. 1-21 ¶

3

AO 72A
(Rev.8/82)

II.B.1 (March 21, 1996) (the "1996 Amendment"). The change made by the 1996 Amendment permits the return of an officer to service in the community before the Board has the opportunity to investigate and, if warranted, recommend administrative action.

Coupled with the 1986 Order eliminating the Board's ability to conduct an immediate investigation, the 1996 Amendment blunts the impact of any Board action, which would be deferred until after an officer exonerated of criminal wrongdoing could be unilaterally reinstated. Bereft of its ability to conduct an immediate investigation, the Board had lost its voice in advising the Chief about whether and under what conditions to return an officer to active duty. Taken together, these two changes -- deferral of the Board's investigation and possible unilateral reinstatement of the officer -- strip the Board of much of its authority contemplated under the consent decree.[2]

II. _Procedural History_

With two inconsequential exceptions,[3] this case had remained

---

[2] The court need not, for the purpose of resolving this motion, find Defendants in contempt of the consent decree based on these two changes. However, the 1986 Order and 1996 Amendment appear to violate the spirit, if not the letter, of the consent decree by gutting the Board's power to conduct a meaningful review.

[3] In 1981, a group of minority police officers calling itself the Connecticut Guardians moved to intervene to represent their interests in the department's promotional policies. Four years later, their motion was withdrawn. In 1990, Defendants sought successfully to modify the consent decree to permit officers to carry their semi-automatic service weapons while off-duty.

4

dormant for some twenty-six years since the entry of the consent
decree in 1973 until last fall.  In September 1999, the Original
Plaintiffs to this action filed a motion for contempt, alleging
that Defendant's "noncompliance with the Consent Decree created
an environment in the H[artford] P[olice] D[epartment] that led
to the fatal shooting of 14-year-old Aquan Salmon on April 13,
1999."  Pls.' Mot. for Contempt [Doc. No. 2] (Sept. 23, 1999).  A
group of interested religious and community groups from Hartford
(the "New Plaintiffs") also filed a motion that same day seeking
to intervene.  See Protected Class Members' Mot. to Intervene
[Doc. No. 1] (Sept. 23, 1999).  Both the Old and New Plaintiffs
(collectively "Plaintiffs") also pressed for the appointment of a
special master to oversee the Hartford Police Department.  See
id.  In their joint memorandum, Plaintiffs alleged that the
aforementioned changes in the Board's review process violated the
Cintron Consent Decree.  See Mem. in Supp. [Doc. No. 3] (Sept.
23, 1999).  Defendants moved to dismiss.  See Defs.' Mot. to
Dismiss [Doc. No. 7] (Nov. 4, 1999).

On November 23, 1999, the Hartford City Council resolved to
drop its opposition to the New Plaintiffs' intervention and the
appointment of a special master.  See Ruling [Doc. No. 17]
granting motions by agreement (Feb. 10, 2000).  After negotiating
revisions to policy and procedure Nos. 1-21 and 1-22[4] to comport

---

[4]     Policy and procedure No. 1-22 established the Firearms
Discharge Review Board in 1982, outlining its purpose, policy and

5

with the Board's authority under the consent decree, the parties
submitted a draft, and the court suggested further revisions.
See Memo to Counsel of Record (Feb. 11, 2000). Before these
revisions could be finalized, the Board was convened on February
22 -- in the wake of the release of the state's attorney's report
-- to review the Salmon shooting under the existing policy and
procedures. The following day, counsel for the parties agreed to
stay the Board's review pending the completion of the revised
procedures. The next day, February 24, the Police Union and
Officer Allan filed the instant motion and also sought injunctive
relief in state Superior Court to compel the Board to continue
its review under the existing procedures. See Hartford Police
Union and Robert Allan v. City of Hartford and Sandra Kee Borges,
No. CV-00-596536 S (Conn. Super. Ct. Feb. 25, 2000). The parties
to the state court action were heard there on February 28th, and
supplemental briefing was filed on March 6th, including an amicus
filing on behalf of the Plaintiffs in this action.[5]

---

procedures to review investigation conducted by the Firearms
Discharge Board of Inquiry. See Hartford Police Dep't Policy and
Procedure No. 1-22 (Aug. 22, 1982) attached to Intervenors'
Supplement at tab 8C. It is unclear how this Review Board
differs from the Board of Inquiry established by the 1970 Order.
Nevertheless, the only relevant change to revised 1-22 from the
prior version is the addition of three lay Hartford residents as
voting members, who are nominated by the Plaintiffs and appointed
by the chief. See id. (revised version) [Doc. No. 28] at ¶
II.C.8 (March 3, 2000).

[5]      The court notes that those same federal Plaintiffs
also moved this court to enjoin the state court proceedings as a
necessary aid of its jurisdiction over the consent decree. See

6

Consistent with the City Council's November 23rd resolution, the Hartford Court of Common Council on February 28, 2000 adopted revised policy and procedure Nos. 1-21 and 1-22, and approved the appointment of a Special Master. See Intervenors' Mot. to Supplement the R. [Doc. No. 30] at tab 7 (March 3, 2000). However, the stipulation regarding appointment of a Special Master and the revised policy and procedure Nos. 1-21 and 1-22 were not filed until after the hearing on the application to intervene. See Stipulation [Doc. No. 28] (March 3, 2000). On March 2, this court held a hearing, at which counsel for the city of Hartford -- the Defendants to the consent decree -- took the position that Intervenors' motion was "legally insufficient" because it was untimely and lacked the proper pleading required by the Rule. See Defs.' Mem. [Doc. No. 27] at 2-3 (March 2, 2000). The Plaintiffs to this action also opposed intervention on the grounds that the protections afforded to both parties by the consent decree trumped any interest Intervenors might have under their collective bargaining agreement. See Opp'n. to Application [Doc. No. 23] at ¶ 8 (Feb. 28, 2000).

III. Discussion

A.    Intervenors' Claimed Interest

The Intervenors claim an interest in the terms of the

---

Emergency Mot. for T.R.O. [Doc. No. 21] (Feb. 25, 2000). That motion, which remains pending, was opposed by the Intervenors. See Opp'n [Doc. No. 24] (Feb. 29, 2000). The court expects that this ruling will obviate the need to address that motion.

7

consent decree -- particularly in the purported modifications[6]
thereto -- by virtue of the collective bargaining agreement (the
"Agreement") to which both the Intervenors and Defendants are
party.  In pertinent part, the Agreement provides:

> Any job benefits or work practices existing prior to the
> date of this Agreement, which were the subject of any
> written memoranda or directives issued by the Chief or his
> Superiors and which are not specifically provided for or
> abridged in this Agreement, are hereby protected by this
> contract.  This provision shall not preclude the right of
> the City Manager to make reasonable changes in such work
> practices and job benefits, provided that no such change
> shall be made for the purpose of undermining the Union.

Agreement § 3.4 (dated approximately Oct. 1999).  Intervenors
argue that, notwithstanding the limitation of the second
sentence, this provision confers on them an interest in the
court's ruling on the Plaintiffs' pending contempt motion.
Specifically, they urge intervention because "the proceedings of
this Court may contravene the current operative Collective
Bargaining Agreement between the Union and the City[,] thereby
directly affecting the rights of the Union and its members, which
include Intervenor, Robert C. Allan."  Mem. in Supp. of
Application for Intervention [Doc. No. 19] at 2-3 (Feb. 24,
2000).  Those rights are prejudiced, Intervenors claim, by the
Union's "loss of effectiveness and standing in the eyes of its

------

[6]    Policy and procedure orders issued by the department
after the entry of the consent decree did not technically modify
that decree because they were not approved by the court.  Revised
1-21 and 1-22 filed on March 3rd have been so approved, and
therefore do modify the consent decree.

8

MAR-Case 8:00-cv-00881-RNC TCO Document 120-2    Filed 03/25/2004    Page 16 of 21   Job-487

members," and the potential deprivation without due process of
Officer Allan's property interest in his municipal employment.
<u>Id.</u> at 3.

B.    <u>Standard for Intervention of Right</u>

In order to intervene as of right under Fed. R. Civ. P.
24(a)(2),[7] an applicant bears the burden on each of these four
elements: "'(1) timely file an application, (2) show an interest
in the action, (3) demonstrate that the interest may be impaired
by the disposition of the action, and (4) show that the interest
is not protected adequately by the parties to the action.'"
<u>United States v. City of New York</u>, 198 F.3d 360, 364 (2d Cir.
1999) (quoting <u>Catanzano v. Wing</u>, 103 F.3d 223, 232 (2d Cir.
1996)).[8]

Although each of these four elements must be satisfied, the
requirements are somewhat malleable:

---

[7]    The rule states: "Upon timely application anyone shall
be permitted to intervene in an action: . . . when the applicant
claims an interest relating to the property or transaction which
is the subject of the action and the applicant is so situated
that the disposition of the action may as a practical matter
impair or impede the applicant's ability to protect that
interest, unless the applicant's interest is adequately
represented by existing parties." Fed. R. Civ. P. 24(a)(2).

[8]    It remains an open question in this circuit -- one the
court need not address in denying the motion -- "whether a party
seeking to intervene before a District Court must satisfy not
only the requirements of Rule 24(a)(2), but also the [standing]
requirements of Art[icle] III." <u>Diamond v. Charles</u>, 476 U.S. 54,
69, 106 S. Ct. 1697, 1707, 90 L. Ed. 2d 48 (1986); <u>cf. United
States Postal Serv. v. Brennan</u>, 579 F.2d 188, 190 (2d Cir. 1978).
("no need to impose the standing requirement upon the proposed
intervenor" where original parties had standing).

AO 72A
(Rev.8/82)

> The various components of the Rule are not bright lines, but
> ranges -- not all 'interests' are of equal rank, not all
> impairments are of the same degree, representation by
> existing parties may be more or less adequate, and there is
> no litmus paper test for timeliness.  Application of the
> Rule requires that its components be read not discretely,
> but together.

United States v. Hooker Chems. & Plastics Corp., 749 F.2d 968,

983 (2d Cir. 1984) (Friendly, J.).  Despite the flexibility

contemplated by Judge Friendly in analyzing Rule 24(a)(2)

motions, the court must conduct its assessment "with an eye to

the posture of the litigation at the time the motion [to

intervene] is decided."  Id.  As such, "[i]ntervention cannot be

used as a means to inject collateral issues into an existing

action."  City of New York, 198 F.3d at 365 (citations and

internal quotation omitted).

C.   Standards Applied

     Mindful of these precepts, the court addresses each of the

Rule's requisites in turn.

     1.   Timeliness

     Intervenors contend that their application is timely because

the first notice they had of the proposed revisions to 1-21 and

1-22 was when the Board's review was suspended the day after

being convened.  Their motion followed the very next day.

     At the hearing, however, counsel for the Original

Plaintiffs, Mr. Schulman, who was a signatory to the consent

decree, informed the court that the Union was made privy to the

terms of the consent decree in 1973.  The current posture of this

case -- now some two and a half decades old -- strongly suggests
that Intervenors time to interject themselves is long past.

In addition, the 1970 Order, which was addressed to "all
police personnel," gave the Union ample notice that the Board's
review would commence within five days of the incident rather
than wait until after the state's attorney's report. <u>Id.</u> Even
though the Intervenors could have raised their objections
earlier, the court does not rest its ruling on untimeliness
alone.

2.    <u>Interest</u>

The Intervenors' professed interest in the subject matter of
this action arises from the protections afforded Officer Allan
and other Union members under the Agreement.  As noted above,
section 3.4 of that Agreement sweeps within its protections
practices predating the Agreement that were the subject of
written directives issued by the chief or his superiors.  All of
the aforementioned written policy and procedure orders fit within
the ambit of section 3.4, including not only the 1986 Order and
1996 Amendment, but also the 1970 Order.[9]  As such, the Agreement
incorporates all of the prior orders, not just the more recent
ones that were issued in violation of the consent decree.
Intervenors cannot expect their Agreement to selectively

---

[9]    The revised 1-21 and 1-22 approved by the Hartford
Court of Common Council on February 28th and filed in this court
on March 3rd post-date the Agreement, and therefore are not
incorporated therein.

11

incorporate only those directives that favor their position.

The Agreement is further limited by its own terms to permit the city to make reasonable changes so long as their purpose is not to undermine the Union. The second sentence of section 3.4 circumscribes the first. The inquiry therefore becomes whether the post-Agreement changes to 1-21 and 1-22 are unreasonable or were designed to undermine the Union. Revised 1-21 and 1-22 are thoroughly reasonable given that they rescind the unilaterally-issued 1986 Order and 1996 Amendment and reinstate the Board's position established by consensus under the consent decree. There is no evidence that these revisions agreed to by both Plaintiffs and Defendants were interposed to undermine the Union's position under the Agreement.

3.   Impairment

Intervenors argue that, by delaying the Board's review of Officer Allan's shooting, the application of the newly-revised procedures would work an impermissible retroactive burden on Officer Allan and all other Hartford police officers protected by the Agreement. In essence, Intervenors want an expeditious review.

To the extent that Intervenors are protected by their Agreement, that protection does not extend to changes in Hartford Police Department policies and procedures issued in violation of the Cintron Consent Decree. The 1986 Order and 1996 Amendment were void ab initio. Therefore, the Board's review under the

12

recently-revised policy and procedures -- which merely restore the status quo ante under the consent decree -- do not impose a retroactive burden.

Nor are Intervenors impaired by the revisions to 1-22, which added three Hartford residents to a panel that had been composed exclusively of police officers. This addition infuses some community representation into a process that remains dominated by police department officials, who, even under the revised procedure, retain a six-to-three supermajority of the voting power on the Board. These three lay members are appointed by the chief, who selects from among six community representatives nominated by the Plaintiffs. Rather than impairing an officer's right to an expeditious process, this welcome change enhances the credibility of the Board's review. Contrary to Intervenors' position, the Board's review, which commences within five days of a shooting incident instead of awaiting the state's attorney's report, will now be more expeditious under the revised procedure.

4.    **Adequacy of Representation**

Finally, Intervenors claim that none of the existing parties to this action adequately represents its interests. Defendants, however, are not only a party to this action, they are also party to the Agreement between them and the Intervenors. Under Rule 24, "[a] party to an action may provide practical representation to the absentee seeking intervention although no [] formal relationship exists between them." Fed. R. Civ. P. 24 advisory

13

committee's note to the 1966 Amendment. Here, though there is no formal relationship, Defendants can provide practical representation to the Intervenors because both are bound by the same Agreement.

Although Defendants and Intervenors have distinct interests under the Agreement, the court does not believe that the city of Hartford would be predisposed to violate its own Agreement. As such, the court finds that whatever potentially-impaired interests Intervenors have under the Agreement can be adequately protected by the other party to that Agreement, the Defendants.

IV. <u>Conclusion</u>

Despite the fluidity of Rule 24(a)(2)'s four factors, Intervenors fail to meet their burden to intervene of right. Their application [Doc. No. 18] is therefore <u>DENIED</u>.

So Ordered.

Ellen Bree Burns,
Senior District Judge

Dated at New Haven, Connecticut, this 15 day of March, 2000.

14